December 30, 1907.

———o———

## No. 4339.

(Court of Appeal, Parish of Orleans.)

## A. C. SUMMERVILLE vs. LOUIS P. RICE & COMPANY.

Questions of fact alone are involved herein.

Appeal from Civil District Court, Division "A."

F. B. Thomas, Plaintiff and Appellee.

Howe, Spencer & Cocke, Defendants and Appellants.

ESTOPINAL, J. The plaintiff doing business as the Magnolia Webbing Company, domiciled in the City of Charlotte, in the State of South Carolina, prosecutes this suit to recover of the defendant the sum of seven hundred and seventy-seven dollars and eight cents ($777.08), averring that he sold to the defendants in the months of August, September, October and November, 1898, merchandise to the amount of two thousand six hundred and ninety-five dollars and ninety-two cents ($2695.92) and that on March 4th, 1899, the defendants paid on account of the above indebtedness the sum of one thousand nine hundred and eighteen dollars and eighty-four cents, (1918.84), leaving the balance due which forms the basis of this suit.

The defendants in their answer admit that on various dates during the year 1898, they purchased of the plaintiff *for future delivery,* through the authorized agent of plaintiff, certain goods and merchandise used by them in their trade, and that the goods purchased at that time were sold with "prices guaranteed."

Defendants further answering say they are not indebted to plaintiff. They aver that in the month of March, 1899, they paid to plaintiff the sum of $1918.93 in full settlement of the merchandise purchased by them through plaintiff's agent, at "prices guaranteed," which defendants interpret to mean that the "plaintiff was to guarantee them against any decline or increase in prices for a similar grade of goods that might take place during the season when such goods are bought in this city, and that such *decline* did take place.

During the progress of the trial of the suit the defendants admitted that $509.00 of the amount sued for was due by them, leaving the actual amount in dispute the sum of $268.08.

The item of $509.00 which defendants admit owing plaintiff is for certain goods taken over at plaintiff's solicitation from Whitney Sloo and Company, Ltd., a competing house in this city.

Defendants allege that they took over the goods from Whitney Sloo & Co. Ltd.; as an accommodation to plaintiff who agreed that the price thereof was to be paid only when said goods were sold, and accordingly defendants now claim to have made to plaintiff a tender of the price of the goods sold to-wit: $509.95, and offered to return certain of those goods that remained unsold.

Plaintiff claims the full invoice price of the merchandise taken over from Whitney Sloo & Co. Ltd., to-wit: $541.24.

The judgment of the lower Court awards plaintiff the full amount sued for from which judgment the defendants have taken this appeal.

The interpretation of a certain contract is involved, as well as certain questions of fact which in the end must be the determining quantity in this suit.

A careful examination of the record does not warrant us in departing from the well established rule consistently adhered to by this court, not to disturb judgments is suit, the determination of which hinge upon questions of fact.

In the argument of this cause our attention was specially directed to an order or contract of sale signed by one W. A. Cheuoweth, the form and terms of which form the basis of this controversy.

Cheuoweth was plaintiff's agent or solicitor.

Plaintiff says that Cheuoweth was handling his goods as a side line for which he paid him a commission.

Plaintiff states that Cheuoweth was authorized to offer certain discounts and these he gives in detail in his testimony.

We find the order which is written and signed by Cheuoweth contains a list of goods with prices set out for each lot, obviously the prevailing market prices at the time, May 1898, and the words "price guaranteed" is written across the document.

Our learned brother of the District Court in his written reasons given for refusing a new trial says:

"The term "price guaranteed," I think from all the evidence and circumstances attending the orders, meant that defendant should be protected against any *increase* of price on that stated, even if prices, at the time of shipment, would have advanced."

We incline to this opinion, though we have not the benefit of what the Judge *aquo* means by the expression "circumstances attending the orders."

What impresses us most about the order is the fact that the price of the goods ordered by defendant is set out for each kind of merchandise. Why fix the price in the order, if defendant's contention be correct, that the goods were bought to be paid for at prices ruling for that character of goods at the time of shipment. This, doubtless, is the "circumstance attending the order,"

which led the lower Judge to conclude that the price fixed in the order was guaranteed against any increase in the price of similar goods at the time of shipment.

This construction or interpretation of the order is confirmed by the fact that the defendants received the goods right along, the invoices showing the prices thereof, and they at no time made formal complaint. But if the defendants be correct in their interpretation of the words "prices guaranteed" what proof have they produced to show that the invoice prices about which they made but a tardy complaint, were higher than those at which they could have purchased similar goods at the time of shipment? There is no such proof and the evidence on that point is not worthy of much consideration.

The unsatisfactory testimony of L. P. Rice, defendant firm whose good faith however, we have no purpose to question, is certainly not convincing.

The record contains no formal offer by any wholesaler or any one else to sell to defendants similar goods as those bought from plaintiff at a less price, and all that we have is the statement of L. P. Rice, that verbal offers were made him by certain drummers. He fails to name a single person making such offers, nor has made any note or entry in his books relative to such offers, relying, he says, entirely on his memory.

Defendants did not notify the plaintiff of these offers at the time they were made, and this they have failed to do notwithstanding the invoices, with prices charged by plaintiff, were constantly staring them in the face. The District Judge very pertinently says in his reasons. "With each shipment came an invoice, the prices stated and no objection was made until long after all deliveries had been made."

The record bears out that statement fully.

Defendants received the goods as invoiced, made no complaint to plaintiff, disposed of the goods at a price predicated on that invoiced and should not, long after the receipt of the merchandise, be heard to say that they pay for same at a price other than that fixed originally, which other price however, they utterly fail to fix or establish. There may be a misapprehension as to the meaning of the contract, and if defendants conception of it be correct, he must then suffer for his carelessness in not demanding at once upon receipt of the invoices, that such prices be

58

made them as were offered by other dealers. The failure of defendants so to do indicates an acquiesence which cannot be shaken by tardy complaints based on indefinite premises.

We think the judgment appealed from is correct and should be affirmed.

Affirmed.